Good morning. May it please the Court. Margaret Littlefield for Petitioners Bubier, Burnite, Saffold, Wycliffe, or Appellants. And I just wanted to say that my task here is to address the arguments of the state that, and the district court in some cases, that the habeas proceedings here are precluded by Gilman and also do not sound in habeas. Mr. Sackler's support. Did you say that again? They're precluded by Gilman? And do not sound in habeas. You're going to respond to that? I'm sorry? You're going to respond to that? Yes. All right. Thank you. All right. The Gilman argument, the argument that Gilman precludes these Petitioners from proceeding individually on habeas is wrong because primarily these Petitioners need speedy relief, and that is the purpose of habeas corpus. And Gilman is a complex 1983 action that has already gone on for years and probably will go on for years. So would your habeas if this were remanded, wouldn't it? Pardon? Realistically, if this case were remanded and we told, these cases were remanded and we told the district judge, go ahead, do these as habeas cases, I think we'd see you here again in three or four years, wouldn't we? Well, habeas is said to be the speedy relief. In practice, is it? I would not like to address that. It is designed to be speedy relief, and that is what it is supposed to be. And because these Petitioners particularly in the four consolidated cases are so close to obtaining parole, they particularly need speedy relief. There are members of the Gilman class who perhaps have just come up for their first trial, and they don't have the record before the board to obtain parole soon. Our Mr. Bouvier, Berknight, Saffold and Wickliffe have all been in for plus or minus 20 years. Each one of them received a three-year denial, which is as close to parole as you can get under Marcy's law. And when did they receive those three-year denials? In 2009, the cases here at issue. And so that was one of the things that I was interested in. They received deferrals in 2009. We're now in 2013. They received three-year deferrals. What happened in the interim? Well, presumably they received parole hearings, I guess. We know that Mr. Wickliffe, the Court has evidence that he was granted parole. Right. And presumably there is no evidence in the record as to the other three. So presumably they were denied? Presumably they had a parole grant and were denied otherwise. So as to all of these four people, the relief they sought, because that's all the district court can give them, is a prompt hearing, correct? Correct. And they've all had a hearing within the last year? But that's not, I don't think, the only relief. The district court could also grant the relief that Marcy's law does not apply to them. Well, no, but even if they did, even if they said Marcy's law didn't apply, the best they could get was an annual hearing, right? Correct. And then they would get immediate hearings. They each had a hearing a year ago. Correct. But then presumably they would then come up for a hearing soon. This year. Have they requested an advanced hearing this year? I believe that I'm not sure that that's in the record. See, the record reflects their requests between 2009 and 2012. Yes. But my problem is presumably they've all had another hearing in 2012. We know one of them got relief in 2012, which is to say he got parole. The other three presumably were denied. The best they would do in the pre-Marcy's law era is have another hearing this year, and so my question is, did they ask for it? Have they asked for an advanced hearing? Yeah. That is not in the record. Let's see. I believe. And if it's not in the record, you know, it's a matter of public record. You can always let us know later. I'm just wondering why these are the cases, these four cases are the cases in which we ought to say, yes, run back to the district court and make a showing that you would have prevailed had you had a hearing when we have a hearing in the last year where the parole board has told us why they should prevail and why they shouldn't. This is Judge Miller. I have one question. Is Wickhoff actually released from prison? I'm sorry. I couldn't understand. Is Wickhoff actually released? No, he has not been. Has the governor ruled on his parole? No, it is not. It hasn't reached the date for the governor to rule yet. Is there any likelihood the governor will intervene? Well, the governor will rule. He was granted parole on May 31st, 2013, Mr. Wickhoff was. So the governor. If the governor denies parole. Then he'll remain in prison. No way to show that you were disadvantaged because whenever he, and if the governor grants parole, it's going to be moved. Well, the governor may be wrong denying parole. Well, but we can't. All we can do, we the Federal system, is order another hearing. We can't order somebody released on parole. And once the governor says this is not a guy I'm going to let go on parole, how are you going to demonstrate that another hearing would, more prompt hearing would have done you any good? Well, the district court can order another hearing because, or this court could order another hearing because it's saying that Marcy's law cannot be applied to these petitioners. And therefore, even if Mr. Wickliffe is reversed by the governor, if Marcy's law doesn't apply to him, then he can go ahead with hearings that are earlier. Sure. But put aside, I'm focusing now, and I know you were here before, on what I called part three of these challenges, facial, systemic, and as applied to my guy. If your guy gets a parole, got a parole recommendation last year, Mr. Wickliffe, and the governor says, I'm not going to let this guy out, how is it you're going to demonstrate that if he had an annual hearing, he would have been, his term would have more likely than not been shortened? Well, again, number one, the board did grant him parole, so the board found that he was suitable. And number two, the governor may be wrong. And whether you can speculate or not, that is certainly a good possibility because the State courts could reverse the governor's decision. Can a State court reverse the governor's decision? Yes. Yes. The State court has the power to say the governor acted incorrectly? Yes. Okay. I was not aware of that. Yes. I thought this was within the governor's clemency powers and therefore not reviewable. No. It must be supported by some evidence and the State courts have reversed many governor denials of parole. Okay. Let's go back to the other three people. If the parole board said in the last year, we're speculating, but we haven't gotten any notice they've been paroled in the last year, no, these guys aren't ready yet, but we think in three years they might be or in five years. I don't know what the deferral was in each of their cases. How can we then find that if we send it back to them more quickly, these people would be likely to get relief? Well, each case has not been litigated on its individual facts. So the, as you call it, Category 3, as applied to this person, the board could be wrong also. And if the cases, if there are facts that show that it is actually reasonably, you know, that a new parole hearing should be held sooner, then that could expedite the release of the Petitioner. Now, I took you off track, and I'm sorry, talking about the timing. But you wanted to talk about why 1983. But we better give your co-counsel some time. I'm just saying, if we're going to argue together, we had it worked out five minutes on the procedural and ten minutes on us. I just hope I have my time to argue. Well, you do if we persuade your co-counsel to sit down. Pardon? Okay. Yes, I just wanted to briefly address. I'll leave the Gilman. Yeah, I think we understand the Gilman issue. I just wanted to briefly address the habeas, whether it sounds in habeas. And I think that there are three words that this Court only needs to know, and that's It also gives a very, very reasoned discussion of Prysor, from which all of these subsequent cases, such as Dotson and Skinner v. Switzer and Blair v. Martel, all three of those cases basically hearken back to Prysor. And Dockin v. Chase addresses those in an excellent fashion, and this Court is bound by Dockin. What do we do with the footnote, the Supreme Court's footnote? Which footnote? Is it Skinner, which says these claims, if at all, would lie in 1983? Well, Skinner. I understand the case is distinguishable, because otherwise we'd be bound by the footnote. The question is whether that footnote puts Dockin into doubt. I don't believe so. First of all, Skinner was not an ex post facto case. No, I understand. We're not bound by it. We're not bound by it. It's not on the facts. But it says, Dotson declared, however, in no uncertain terms, that when a prisoner's claim would not necessarily spell speedy release, that claim does not lie at the core of habeas corpus and may be brought, if at all, under Section 1983. And then the Court cites not only its opinion in Dotson, but Justice Scalia's concurrence in which he says that's the dividing line. If you're not going to get out more quickly, you know, if it's not going to necessarily spell your release, it's a 1983 case. So the question that I'm grappling with is, has Dockin been sufficiently eroded now that it's not binding precedent in this Court? I do not believe so, because if you look at Dockin, it basically has analyzed all of the ‑‑ No, I think Dockin's right. I think it was brilliant. It's analyzed all of the issues that are raised, you know, even by the school. No, that's not my question. I think Dockin is a brilliantly reasoned decision and clearly correct statement of Supreme Court law at the time. The question is whether or not the Supreme Court in the last two cases, in Dotson and in Skinner, has said, well, we don't think so. We want to draw a bright line between 1983 and habeas, and the bright line is, if winning would not necessarily get you out quicker, then it's a 1983. If winning would get you out quicker by shortening your sentence, then it's a habeas. Why isn't that the bright line to Supreme Court? Well ‑‑ Albeit in footnotes, seems to have drawn. I don't think that it was necessary to this decision. No, it's dictum. It's plainly dictum. And therefore, it's not ‑‑ it hasn't changed the reasoning or the decision in Dockin. So if the Supreme Court ‑‑ is Supreme Court dictum sufficient to erode a Ninth Circuit decision? I don't believe so. Well, because the problem is that if they rule on the merits, it's eroded because they told us we were wrong. So there must be something short of a ruling on the merits that erodes our prior decisions. What is it? I don't know. I'm asking you because I don't know. I don't think I can answer that either. Even after you read Supreme Court decisions, you don't know. That's right. All right. Well, thank you. That's my ‑‑ and let me ask the question. We'll give you additional time, I hope. Judge Reinhart will. If not, I'll keep asking questions so your co‑counsel has the ability to make his argument. But let me ask the question I've asked at the beginning. Why aren't defendants as a whole, as opposed to your particular clients in this case, better off if we proceed through 1983? No exhaustion requirement. No head pedeference. You've got the ability to put ‑‑ no pinholster issues. Isn't that a better world? Isn't the Supreme Court telling us that's a better world? Well, in theory. In theory, habeas should provide the speedy relief that these individuals need. And even if 1983 is a better ‑‑ may be a better platform, these individuals still have the right to litigate their individual cases. And the 1983 action in Gilman, I mean, they could have filed it as a 1983 action, but they didn't, and they are entitled to litigate it in habeas, even if they would be better off in a 1983 action, which is perhaps true or not. And it may not be that the 1983 action, for example, in Gilman, can provide the relief that each of these individuals need in their individual case. All right.  Let's hear from your co‑counsel, who has 39 seconds left, but we'll give him some more. Michael Satchers on behalf of the same four Petitioners. And I want to focus on the fact that each of those Petitioners were denied for the minimum of three years. So they were as close to parole as they could be under Marcy. Right. But this is my problem. You're attacking in this case the 2009 denial of parole. And the application of Marcy's law in all respects. I know. But you're saying to us, boy, if we'd only had annual hearings after 2009, we would have gotten paroled. And as to three of these guys, apparently they weren't. So we have one out of four, 25 percent. We're just talking significant risk. So only 25 percent of the people affected are actually serving longer terms. But in a habeas where you're attacking, where you're saying my client would have likely gotten parole, and there's three of these guys here who we know the parole board in 2012 said no to, at least we think that. If they said yes, I'm sure you would have told us. Well, they did say no. And they gave them a three‑year deferral again? Two of them got three‑year deferrals. Saffold got a five‑year deferral because now there's a new normal with the Marcy's law. You know, it used to be 50 is the new 40. Now 15 is the new 5, and 10 is the new 4. I mean, to the extent you're making the third kind of challenge. That's exactly what we're doing. To the extent you're making the third kind of challenge, don't we have ‑‑ and you're making it to a 2009 decision, don't we have sort of incontrovertible proof that had they been given annual hearings in 2010, 11, and 12, they would have been denied? Yes, but they're still having Marcy's law apply to them. And, for example, Saffold, he's the guy who at his initial hearing, under the old law, the district attorney showed up and said you ought to give this guy parole because he wasn't the bad dude. He talked the one, his co‑defendant out of raping the woman, and he comes from a good family, and he was the victim himself. And the record to the board at that point was five years of clean time. He'd done all the reforming. No, it's a bad parole board decision, but we don't review bad parole board decisions. The question is, given the bad parole board, how can you demonstrate that your client would be more likely to obtain relief had Marcy's law applied between 2009 and now, given that he was denied relief in 2012? It doesn't have to be more likely. It has to be there's a significant risk of a longer term. So if he ‑‑ if there was a good chance, some chance that he would have gotten a parole date less than three years, Marcy's law takes away all discretion. It's kind of like Lindsay in that regard, which found ex post facto the fact that it took all possibility of release away from the State. You had to serve the maximum term. In this case, it takes all possibility of a parole date earlier than three years. Well, it doesn't, according to the California Supreme Court, because they read the law as allowing advanced hearings on request. Yes. So if ‑‑ assume we got to 2012. Don't we have to ‑‑ I mean, there's nothing in this record about whether or not after 2012 your clients have asked for an advanced hearing, is there? There isn't. But in one of the cases, there actually was an advanced hearing granted in one of the three. Now we're down to three because we've got some guy who's on his way out. And maybe the Governor's going to reverse the date. But that doesn't take away the showing made that there is a substantial risk of longer imprisonment. Everything is moved back with Marcy's law. Everything is delayed. Now we've got it moved up. But isn't that the ‑‑ I mean, I tend to agree with you. But isn't that the facial challenge that Gilman at least said, Gilman 1 at least said was not likely of success under merits or not probable of success under merits and which has now been moved over into the Stage 2 as applied? Yes. That's the class challenge. Yes. So tell me about why these individual cases ought to proceed or are likely of success given what the parole board did in the last year. Because there may be a showing. Let's say with both Vicks and Gilman that on a whole this isn't going to create an unreasonable risk because we have these advanced hearings. But in this case, I think the advanced hearings are not saving the law from ex post facto. They're an instrument or an element of the ex post facto because these advanced hearings have a number of obstacles that cabin the discretion of the board to grant  parole. Under the old law, there was unlimited discretion. As soon as the board thought you were suitable for parole, you could be released. Now, as long as they find you're not suitable at the moment, they have no discretion to set a date earlier than three years, unless then you meet these obstacles of showing that there's some change in circumstances, there's some new evidence. But absent that, it's not ‑‑ and you have to keep in mind that this is a highly discretionary decision that the board is making. They have a lot of subjective analysis, right? Greenhold said it was imponderables, a list of imponderables. Those people, in my ‑‑ each of these four prisoners could have been seen by a parole board the next week, never mind the next year, and with a different subjective determination done by different panel members, could have been found suitable for parole. Let me ‑‑ I don't want to ‑‑ my colleagues are being very nice by letting me continually ask this question, so let me ask it one more time because it troubles me in these four cases. I understand why Mr. Wickliffe has a reasonably good argument that if he had gotten a more prompt hearing, he might have gotten a more prompt parole because when he finally got one, he got a parole. Exactly. But as to the other three guys, they have had the hearing. And your burden in Stage 3 of this class action thing would be to show that more likely than not, their denial ‑‑ in those three interim years, at least, 2009 to 2012, would have been the other way had they gotten annual hearings. Isn't the board's eventual action on these applications sort of damning to that claim? All right. Let me go back and question, number one, the more likely than not. It's not more likely than not. It's just a significant chance that they would have gotten parole. No, that they would have gotten parole. Yes. And you can say ‑‑ You think the law as to individual claims is significant chance as opposed to probability or more likely than not? Yes, it's significant risk. That's the whole ex post facto analysis now. If you can show that this new law has created a significant risk that you will serve a longer time, it's ex post facto. And if you can show, hey, I had a good chance of getting a parole date in one or two years, but the board had no discretion at all, even though it itself may have thought at the time it was denying parole, then there's a significant chance that you served a longer period. And we have it proof positive with Wycliffe, and good point, we have proof positive that that is not the case with the other three defendants now. But you have to keep looking at the implementation of Marcy's law. Look at ‑‑ we do have in a motion for judicial notice by the state that Saffold was denied parole for five years at his subsequent hearing. That evidence shows it was purely a subjective determination. It was largely because he showed a bad attitude at that hearing. Now, here's the guy who under the old law at his initial hearing, they said you could get a date in 2009. That's when he got his hearing under Marcy's law. Even under Marcy's law, they said three years minimum, you're as close as you can be under Marcy's law. Now, even though there's been no showing of lack of rehabilitation or disciplinary or everything, now he's been put off for five more years. So you have an even greater risk, really, shown by him. I mean, in the long run, that Marcy's law is just setting things so far off for everybody, it's the new normal. Now, because he's not so close, we're going to set him back five years instead of two years. And that goes to, I think, Miller and also the most recent case of Hugh in the United States Supreme Court, which says when you have kind of a new baseline that you're discretion is now exercised under a new orientation so that as a general rule, you're going to be serving more time under the guidelines of Miller or Hugh. That's enough to show a reasonable risk or a significant risk because you're caboting discretion that was otherwise being exercised in a way that would result in lesser punishment than under the new law. And each of these individuals had a strong case on this record in 2009 that they had a significant risk. I mean, you had ‑‑ I'm getting them mixed up now, too, but I think it was Bernhardt. Bernhardt was told in 2009, hey, you have a ‑‑ realistically, you should get a date now. In 2009. We're denying you for two years. Realistically, you should get a date in 2009. 2009 came, and we know under Marcy's law, he was denied for three years. And so it was put off for another three years. I think he was the one who eventually, when he was put off for three years again, while this case has been litigating, finally did get an advancement. But even advancement doesn't get you back to the one year because of the practicalities of the situation. He's got to do at least 18 months, if not longer. So you have just, as a matter of kind of regularity in the system, individuals, and particularly the Petitioners here, ending up serving a longer term. The lack of discretion in that three‑year denial bars for the prisoners that are on the brink of a parole grant, and it took away all the discretion. None of the cases like Morales or any of those cases, Garner, took away the discretion to grant parole. They just granted additional discretion to extend the time of denial. This actually takes away the discretion of the board to grant parole, and then it sets up obstacles to get back to the old normal because you now have to show the change of circumstances. The advancement hearings are referred to the victims for their input. What's wrong with that? There's nothing wrong with that except that it increases the likelihood that you're not going to get an advancement. So if you had a parole board who thought at the time it denied you parole, this guy could be ready in a year under the old law, would set it in a year or two years. Now, you have no discretion to do that, and the board's discretion is cabined because they now have to take into consideration or have input from the victims, and you know the more victim participation there's going to be, the greater risk you're going to be serving a longer time in prison because that's what Marcy's victims get at the whole notion that the perpetrator of the crime might be released. Reduce their jitters. That's what it's about. It's about extending time and denying release, because release, the victims don't like that. All right. Thank you. I thank you. Thank you, Your Honor. Thank you, Your Honors. May it please the Court, Christopher Wrench again on behalf of Appelese. I think the Gilman issue has been well discussed, and I'll move past that unless there's something the Court would like me to address. What did you say? I'm sorry. I said I think the Gilman question has been well discussed this morning, and unless the Court wants me to address something, I'm going to jump into the habeas jurisdictional question. Counsel cited Dock and V. Chase, and there have been three major developments since Dock and V. Chase that the Court has talked about. The Supreme Court's decisions in Dotson and Skinner and this Court's decision in Blair where the three-judge panel treated the footnote from Skinner as the holding of the case and applied, as Your Honor mentioned, the if-at-all language and found that a conviction that does not necessarily imply the invalidity of a conviction or necessarily result in speedier release must be brought if-at-all in a 1983 case. And these claims here are simply seeking a speedier opportunity to convince the Board of an individual's suitability. It is not a result that will necessarily accelerate release from prison. Is it your position that we are bound by that last ruling, the last case you decided? I'm sorry, Your Honor. I said is it your position that we, this Court, is bound by that decision you just cited? Yes, Your Honor. I think certainly this Court is bound by Blair, Dotson, and Skinner. They have taken the legs out from Dock and, so to speak. Let's talk about Blair. Blair, how are we bound by Blair in an ex post facto claim? Well, Your Honor, I don't think that's the case. Isn't it just this, isn't it just language that, if applied to this case, would cause a different result? Certainly. The Court is bound by the legal holding in Blair. The underlying constitutional claim did not need to be identical, although there is a very similar factual analogy with Blair where the inmate was seeking an order, ordering the State court to rule on his petition faster. So what the inmate in Blair was seeking was a Federal order to accelerate State consideration, and that's directly analogous to what the four inmates are seeking here. They're seeking an order for faster parole hearings. And as the Court found in Blair, that type of claim is outside the scope of habeas jurisdiction. And a distinguished panel. I'm trying to figure out which one of the judges was wrong, but Judge Reinhardt was on Blair, so I'll leave him to deal with that. Well, Your Honor, and I mean Dockin is the case. And I guess my question, and I asked your opponent with this, so I want to ask you that, too. Dockin was the law, plainly was the law of the circuit. When did it stop being the law of the circuit? I would submit with Wilkinson v. Dotson, but I think certainly post-Blair and Skinner v. Switzer. Dotson was a 1983 case out of 2004 that also dealt with the timing of parole hearings. The Supreme Court found 1983 was proper, and in doing so found that the core of habeas corpus is for claims that necessarily go to undermine a conviction or accelerate release from incarceration. I guess I'm asking this in a procedural way. Under our internal case law, only an en banc court can overrule a previous decision of this Court unless the Supreme Court has somehow sufficiently eroded it so that we don't have to follow it anymore. So I'm asking really in general, what is sufficient erosion? How do we find that? Well, Your Honor, this Court's standard is clearly irreconcilable with subsequent Supreme Court law, and I think the — it's clearly irreconcilable. There needs to be a statement from the Supreme Court that shows that this Court's panel, previous decision is no longer good law. And — Clearly irreconcilable with a footnote or — Well, the footnote is a footnote, but it was certainly part of the holding and analysis of Skinner where the Supreme Court set out to draw a clear line and define what goes to habeas, what goes to 1983. So the footnote, while it's a footnote, it's certainly part of the Court's analysis and holding. And this Court's decision in Blair recognized that, where it — Is there no room for overlap? Between habeas and 1983? With the Supreme Court's law where it is, no. It's, as Skinner says, it's a clear line. I thought there was a decision by Judge Berzon. I don't remember its name, in which he suggested that there was room for overlap. Yes, Your Honor. That's Dockin v. Chase. And it is the State's position now that with the three cases that followed Judge Berzon's opinion that Dockin is no longer good law. It's plainly inconsistent with Dockin's? Yes, it's plainly inconsistent with Dotson and Skinner, as well as Blair. Blair did not directly address Dockin, but I think there's an implication in Blair that this Court recognized that the distinction between habeas and 1983 has changed. See, and here's my problem. I tend to agree with you. I tend to think the Supreme Court is telling us that it means to draw a bright line. But we have this clearly irreconcilable standard. And we've got Blair that says, well, at least with respect to appeals, it's a 1983 claim. We've got Dockin that says with respect to parole hearings, it's a habeas claim. And we have two other cases from the Supreme Court, Wilkinson, which says it's an okay 1983 claim, but we're not excluding habeas. And then we have Dictum and a footnote in Skinner that says, you know, that that takes your position. Does that make — is that enough to make it clearly irreconcilable, or are we just stuck saying we kind of think the Supreme Court's going to tell us we're wrong, but the en banc court has to do it? I think it is enough, Your Honor, because I don't think the type of claim is what's clearly irreconcilable. It doesn't — the standard is necessarily impact factor duration. It's not necessarily impact factor duration in the parole context or the DNA testing context that was in Skinner. What has become clearly irreconcilable post-Dockin is the legal standard for deciding whether a claim must proceed in civil rights under 1983 or habeas. And it's now clear from the Supreme Court, and as affirmed by this Court in Blair, that that standard is one that, you know, if the claim, if success, will necessarily achieve that result, it goes in habeas. If not, it goes in 1983. And I haven't heard any dispute from opposing counsel that these claims will not — I haven't heard an argument that they will necessarily impact the factor duration. And I suppose Blair might be even a stronger case for — you might have a slam-dunk claim that the State court should be hearing on appeal, and we can look at it and say if they hear your appeal earlier, you'll win earlier. But with the parole board, it's always up to them, isn't it? Correct, Your Honor. And I think Blair is really factually strong for my position here. It's not necessarily in the parole context, but it's the same type of claim. The decision in Blair talked about differentiating a claim, dealing with process versus substance. And Marcy's Law claims here are process claims. They are claims seeking faster process, not one that actually goes necessarily to the substantive result. And that's exactly what Blair addressed, and that's where they applied Dotson and Skinner. I mean, a few — a few points, even if we're going to assume jurisdiction to respond to some of the points counsel made regarding the merits. Number one, there was a notion that a — Mr. Wickliffe's subsequent grant was proof positive that he couldn't have gotten released earlier. That's directly rebutted by the petition to advance process that this Court relied on in Gilman. Mr. Wickliffe's has been granted parole now, but he could have received faster consideration upon the filing of a petition to advance. There was also discussions about the obstacles that the petition to advance process requires in terms of needing a showing of new information or changed circumstances. That's the precise standard the Supreme Court relied on in Gardner and Morales, where those states also had an advanced hearing or a practice where it was new information or changed circumstances. The Supreme Court signed off on those. It's the same standard that's in Marcy's law. And under AEDPA, which controls this case, it certainly was not unreasonable for the State courts here to reject the claims on the merits. You've tried to supplement the record with respect to one of the petitioners, as I understand it.  Do you have information? Whether or not the record should be supplemented, it would be useful at least to submit the information and let the other side react to it to see what we know about their current status. It isn't in the record, but I do, if you'd like to hear now, I do have the subsequent. Well, I don't think you need to do an oral argument, because I'd like the other side to have a chance to respond to it, as they did to your written submission. But it would be useful to have it. Certainly, Your Honor. We will file a 28-J letter with that subsequent history. A couple of other quick points. There's discussion of the role of victims. Victims were involved in the parole process for decades, long before Marcy's law came along. And there's no ex post facto issue there. And finally, the intent of Marcy's law was discussed. And the California Supreme Court in Vicks decided the intent of Marcy's law. And it concluded that Marcy's law was designed to better allow the board to allocate its resources and space out its hearings. It found that there was not a punitive intent. And under this Court's decision in Southeast Chiavo, as well as others, for purposes of the ex post facto clause, this Court accepts the State court's highest or the highest State court's interpretation of State law as binding. So it is binding on this Court that Marcy's law did not have a punitive intent. And what does that dispose of? Suppose it didn't have punitive intent, but it had the effect of doubling the amount of time people spent in court. It doesn't dispose of anything. It was simply a counterpoint to opposing counsel's suggestion that there was a punitive intent. The standard, Your Honor, is correct, is significant risk under Gardner-Morales. And really, Gardner-Morales did not look at the intent of the law. The question is the practical implementation and was there a significant risk. And given, I don't want to repeat myself from the previous arguments, but given the state of the law and the records here and the standard under AEDPA and Harrington v. Richter, the State court decisions here were well within the bounds of AEDPA. And if there are no further questions. I had one. I'd like to get back to Whitcliffe. Do you have any reason to believe the Governor will intervene in Whitcliffe? Was the question when the Governor? Do you have any reason to believe that the Governor will intervene to deny Whitcliffe? Your Honor, I'm sorry, I'm struggling to hear you, but I don't have reason to believe one way or the other. You, Attorney General, you're not seeking any review, is that right? Am I seeking review of the Governor's decision? No, we are not asking the Governor to review it. It's at the Governor's discretion. When's the deadline for him to review? It's generally five months from the date of the parole grant. That's what I understood, and it was in May, and the recommendation was made in May. Yes. So if I do the math correctly, let's see. It's October. The Governor's end of October, I think, would be about when we would. Could we vacate submission of this case and just wait and see whether what happens in it, and if it's – if he gets parole, we can dismiss it as moot, and if it's not, we can decide the case? The State wouldn't oppose that. I mean, I'd suggest there's ample grounds to dismiss it otherwise, but certainly if he is released at the end of October, the case would be moot. Thank you, Your Honor. Thank you, counsel.  Yes. Brief rebuttal. Yes, Your Honor. Thank you. We would request that the Court proceed and decide Wycliffe's case. And don't pay attention to the clock. Okay. I usually don't. Because, you know, in our position is he's already being unduly confined precisely because of Marcy's law. But here's my problem with that. All we can do – all we can do – we wouldn't do it, but all we can do is order that he get an immediate hearing at which he would be granted parole, I assume. And so what relief are we going to be able to give him that he already hasn't got? I understand if he gets – if the Governor turns him down, you've got all these arguments about all the years thereafter. But between now and October, what relief could we possibly give Mr. Wycliffe? Right. Because he's beyond where he would be. Yeah. He already got the hearing. He already got the parole. I'll submit it on that basis, Your Honor. On Garner and Morales, what has to be kept in mind in that case is there was no restriction on the ability of the board to grant the people parole or to set the time when they should be heard. So the fact that they had some advancement procedure is different for somebody like our clients who have been denied the minimum amount of time, contrary to the discretion of the board, at least under the old law. And speaking of Morales, that was a habeas petition, so that the Supreme Court had decided that case. Maybe there wasn't an issue raised about it being habeas, but I think there's something about the fact that the Supreme Court was reading way too much into a footnote on an inopposite case to suddenly decide that that sub silencio reverses what the law of the circuit, and it does take more than just a buried footnote, or a Ninth Circuit case on a completely other issue that doesn't even think it bears enough to mention the Dockin case. And so that remains, I think, the good law of the circuit. Thank you. Thank you, counsel. The case just argued will be submitted.
judges: Reinhardt, Noonan, Hurwitz